10113530.1.22-36

RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 15 2024

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
**FEDERAL QUESTION & DIVERSITY OF CITIZENSHIP**

*Civil Suit for Aggravated Torts of Slander, Fraud, False Imprisonment, and Interference with Contractual Relations, seeking Twelve Million Dollars in Exemplary Damages; Jury Trial Demanded*

TAMAH JADA CLARK,
(IN PROPRIA PERSONA)
**PLAINTIFF**

Vs.

INTERNAL REVENUE SERVICE
["THE UNITED STATES"], DELTA
COMMUNITY CREDIT UNION,
**DEFENDANTS**

CIVIL SUIT NO. 1:24-CV-3613

**Monday, August 12, 2024**

**DECLARATION: CIVIL SUIT AT LAW** (PURSUANT R.S. § 629; [SEE SECTIONS 289, 291, 292, THE JUDICIAL CODE; MAR. 3, 1911, C. 231, § 289, 891, 292, 36 STAT. 1167] AND SECTION 24, THE JUDICIAL CODE; MAR. 3, 1911, C. 231, § 24, 36 STAT. 1091)

*Render to Caesar the things that are Caesar's, and to God the things that are God's.* Mark 12:17

**STATEMENT OF CLAIM**

COMES NOW TAMAH JADA CLARK in propria persona *sui generis*, "PLAINTIFF", seeking exemplary damages against "DEFENDANTS" INTERNAL REVENUE SERVICE

10113530.1.23-36

["THE UNITED STATES"] (IRS) and DELTA COMMMUNITY CREDIT UNION (DCCU) for slander, fraud, false imprisonment, and interference with contractual relations. **Jury trial is demanded**.

FEDERAL QUESTION: PLAINTIFF challenges the constitutionality of income taxes on the free inhabitants of the states of the Union as violative of the state and federal constitutions.

**JURISDICTION AND VENUE**

**I.**

All parties are citizens of the United States. There is complete diversity between all parties within the meaning of Article III § 2—which limited jurisdiction is herein invoked for adjudication of this Suit.[1]

**II.**

Tort action at common law requires application of state law. [2][3][4] "The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise

---

[1] Article III, Section 2 "claims and controversies" applies to "the claims or contentions of litigants brought before the courts for adjudication by regular proceedings established for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs." *Smith v. Adams*, 130 U. S. 167, 173, 32 L. Ed. 895, 897; *LaAbra Silver Mining Co. v. United States*, 175 TJ. S. 423, 456, 44 L. Ed. 223, 235.

[2] "Civil actions for slander and libel developed in early ages as a substitute for the duel and a deterrent to murder. They lie within the genuine orbit of the common law, and in the distribution of American sovereignty they fall exclusively within the jurisdiction of the states." Brant, The Bill of Rights: Its Origin and Meaning 502-503 (1965).

[3] "It is now settled that States 'have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law.'" *Ferguson v. Skrupa*, 372 U.S. 726, 730-31 (1963)

[4] "From these consideration the Congress wisely enacted, 'That the laws of the several' States, except where the constitution, treaties, or statutes, of 'the United States shall otherwise require or provide, shall be' regarded as rules of decision in trials at common law in the 'courts of the United States, in cases where they apply.' This adoption of the State laws, extends as well to the unwritten, as to the written law; — to the law arising from established usage and judicial determinations, as well as to the law created by positive acts of the Legislature." *Brown v. Braam*, 3 U.S. 344, 352 (1797)

10113530.1.24-36

require or provide, shall be regarded as rules of decision in trials at common law, in courts of the United States, in cases where they apply." *See* R.S. § 721.[5]

**III.**

Federal question jurisdiction requires application of the federal constitution and the laws of the United States of America. *Well Works v. Layne*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action.")

**PARTIES**

**I.**

PLAINTIFF, TAMAH JADA CLARK, is a Hebrew-American *naturalized* citizen of Georgia,[6] in accordance with R.S. § 1994 and the Act of Congress of February 10, 1855, [7] [8] through marriage to a free white man and *natural born* Citizen of the United States of America—notwithstanding Sept. 22, 1922, c. 411, § 6, 42 Stat. 1022 [An Act Relative to the naturalization

[5] "The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in courts of the United States, in cases where they apply." *See* R.S. § 721.

[6]Naturalization has been defined by the U.S. Supreme Court as "the act of adopting a foreigner, and clothing him with the privileges of a native citizen." *Boyd v. Nebraska ex rel. Thayer*, 143 U.S. 135, 162 (1892).

[7] "Any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen." R.S. § 1994.

[8] "As we construe this act, it confers the privileges of citizenship upon women married to citizens of the United States if they are of the class of persons for whose naturalization the previous acts of Congress provide. The terms "married" or "who shall be married" do not refer, in our judgment, to the time when the ceremony of marriage is celebrated, but to a state of marriage. They mean that whenever a woman who under previous acts might be naturalized is in a state of marriage to a citizen, whether his citizenship existed at the passage of the act or subsequently or before or after the marriage, she becomes by that fact a citizen also. His citizenship, whenever it exists, confers, under the act, citizenship upon her. The construction which would restrict the act to women whose husbands at the time of marriage are citizens would exclude far the greater number for whose benefit, as we think, the act was intended. Its object, in our opinion, was to allow her citizenship to follow that of her husband without the necessity of any application for naturalization on her part". *Kelly v. Owen*, 74 U.S. 496 (1868).

10113530.1.25-36

and citizenship of married women],[9] or Title 8 of the United States Code which does not apply to the Republic. [10] [11]

II.

DEFENDANTS are citizens of the United States subject to the jurisdiction thereof which are not citizens within the original meaning of Article III,[12] yet are liable at Law for prohibited acts.[13]

III.

Federal Rules of Civil Procedure do not alter the jurisdiction of U.S. District Courts; substantive rights of PLAINTIFF may not be diminished, [14][15] nor those of DEFENDANTS enlarged.

IV.

---

[9] Note: This Act alleges to have repealed R.S. § 1994 but not the Act of Congress of February 10, 1855. *See* **Exhibit A**: An Act Relative to the naturalization and citizenship of married women.

[10] "The term 'United States', except as otherwise specifically herein provided, when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands." 8 U.S.C. § (a)38.

[11] "'The term "State' includes the District of Columbia, Puerto Rico, Guam, the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands." 8 U.S.C. § (a)36.

[12] "[i]in reaffirming 'the doctrinal wall of *Chapman* v. *Barney*,' we explained *Russell* as a case resolving the distinctive problem 'of fitting an exotic creation of the civil law . . . into a federal scheme which knew it not.' 382 U.S., at 151. There could be no doubt, after *Bouligny* that at least common-law entities (and likely all entities beyond the Puerto Rican *sociedad en comandita*) would be treated for purposes of the diversity statute pursuant to what *Russell* called '[t]he tradition of the common law,' which is 'to treat as legal persons only incorporated groups and to assimilate all others to partnerships.'" *Carden v. Arkoma Associates*, 494 U.S. 185, 190 (1990)

[13] "The common law has established a principle, that no prohibitory act shall be without its vindicatory quality; or, in other words, that the infraction of a prohibitory law, although an express penalty be omitted, is still punishable." *Chisholm Ex'r. v. Georgia*, 2 U.S. 419, 422 (1793)

[14] "While the ancient forms of action are now abolished, all the various remedies known to the law still remain, and are administered through the medium of the single civil action of the code quite as certainly and much more speedily than under the former practice." *Wilcox v. Saunders*, 4 Neb. 587 (1876)

[15] "The code has not changed the principles by which courts determine the rights , duties and liabilities of the parties to an action. They remain as before its adoption ; therefore , in stating a cause of action it must appear from the facts alleged that there is a liability of the defendant to the plaintiff to enforce which he is entitled to invoke the aid of the court. To enforce or protect these rights, all the remedies known, either at law or in equity, still remain to a party, and may be speedily applied by the court through the single civil action of the code." Samuel Maxwell. A Treatise on the Law of Pleading, p. 8 (1892).

10113530.1.26-36

The presiding judge is advised, in advance, that he is not a party to this Suit and may not practice law from the bench but must serve as a neutral administrator of Justice. "It shall not be lawful for any judge appointed under the authority of the United States to exercise the profession or employment of counsel or attorney, or to be engaged in the practice of the law. And any person offending against the prohibition of this section shall be deemed guilty of a high misdemeanor." *See* R.S. § 713; Mar. 3, 1911, c. 231, § 258, 36 Stat. 1161.

**CAUSE OF ACTION**

**I.**

The term "United States" has different meanings depending on the context. *Hooven Allison Co. v. Evatt*, 324 U.S. 652, 671-72 (1945) ("The term "United States" may be used in any one of several senses. It may be merely the name of a sovereign occupying the position analogous to that of other sovereigns in the family of nations [i.e. an **international person** or **State**]. It may designate the territory over which the sovereignty of the United States extends [i.e. a **geographical territory** or **America**], or it may be the collective name of the states which are united by and under the Constitution [i.e. **federal corporation** or **Government**].")

**II.**

Under the provisions of 26 U.S.C. § 7701(a)(9): "The term 'United States' when used in a geographical sense includes only the States and the District of Columbia." It does not mean the Republic which definition excludes the District of Columbia. *Meese v. Keene*, 481 U.S. 465, 484 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term.")

**III.**



Internal Filing ID:
GA-USD-NDG-08.12.2024-F1

10113530.1.27-36

PLAINTIFF is not a "United States person" within the meaning of 26 § U.S.C. 7701(a)(30) who is domiciled in the District of Columbia pursuant 26 § U.S.C. 7701(a)(39)[16], but a *nonresident alien* being "neither a citizen of the United States nor a resident of the United States" (26 U.S.C. 7701(b)(1)(B)).[17]

IV.

PLAINTIFF does not generate any gross income from sources within the United States as set forth at 26 U.S.C. § 861. "In the case of the federal government where the individual is either a United States citizen or an alien residing in the taxing jurisdiction, the tax ... is based upon jurisdiction over the person; where the individual is an alien not residing in the taxing jurisdiction, the tax ... is based upon jurisdiction over the property or income of the nonresident individual located or earned in the taxing jurisdiction". *Great Cruz Bay, Inc., St. John, Virgin Islands v. Wheatley* 495 F. 2d 301 (3rd Cir. 1974)

V.

The United States is a foreign corporation with respect to the states of the Union. It is not a government of the free inhabitants of the States but a government of the States themselves. (*Matter of Merriam*, 141 N.Y. 479, 485 (N.Y. 1894) "The United States is a government and body politic and corporate, ordained and established by the American people acting through the sovereignty of all the states."

VI.

PLAINTIFF is not a *taxpayer*.[18] Direct taxes on the person (*in personam*) or property (*in rem*) of PLAINTIFF is unconstitutional. Apportionment of Direct Taxes pursuant Article I, Section 2, Clause 3, Constitution for the United States of America—1787 applies ***to the States*** of the confederacy stiled "The United States of America" under Article I, Articles of

[16] "If any citizen or resident of the United States does not reside in (and is not found in) any United States judicial district, such citizen or resident shall be treated as residing in the District of Columbia for purposes of any provision of this title relating to- (A) jurisdiction of courts, or (B) enforcement of summons." 26 § U.S.C. 7701(a)(39).

[17] "An individual is a nonresident alien if such individual is neither a citizen of the United States nor a resident of the United States (within the meaning of subparagraph (A))." 26 U.S.C. 7701(b)(1)(B).

[18] "The term 'taxpayer means any person subject to any internal revenue tax." 26 U.S.C. § 77-1(a)(14).

10113530.1.28-36

Confederation—1777[19] as provided for in Article VIII thereof, and the U.S. Congress does NOT have Authority to lay or levy the same.[20]Therefore, the U.S. Congress cannot impose incomes taxes upon PLAINTIFF under Article I, Section 8, Clause I, Constitution for the United States of America—1787 or under any other constitutional provision, law of the United States of America, or law of the United States.

**VII.**

The federal government does not have authority to tax free inhabitants or *sovereigns* of the states. *Glass v. Betsey*, 3 U.S. 6, 13 (1794) ("In Europe, the *Executive* is almost synonymous with the *Sovereign* power of a State; and, generally, includes legislative and judicial authority… Such is the condition of power in that quarter of the world, where it is too commonly acquired by *force*, or *fraud*, or both, and seldom by *compact*. In *America*, however, the case is widely different. Our government is founded upon compact. Sovereignty was, and is, in the people.

a. The states at North America are not a *federation*, but a "confederation" [21] in league under the Articles of Confederation: they are not a single sovereign power but an alliance of several independent states. This means each retains its own nationality and they are more or less foreign countries one to another whose free inhabitants are generally without the jurisdiction of the federal government.

b. The U.S. Government ***is*** a federation[22] formed by and under the U.S. Constitution: a government of governments, not a government of the free inhabitants. This means the

[19] "The stile of this confederacy shall be "The United States of America." Article I, Articles of Confederation—1777.

[20] "All charges of war, and all other expenses that shall be incurred for the common defence or general welfare… shall be **drayed out of a common treasury, which shall be supplied by the several States**… [t]he taxes for paying that proportion shall be **laid and levied by the authority and direction of the Legislatures of the several States".** [emphasis added] Article VIII, Articles of Confederation—17777.

[21]"[A] group of independent nations, states, or tribes more or less permanently united by a treaty or alliance for joint action (as for defense against a common enemy)." "Confederation." *Merriam-Webster's Unabridged Dictionary*, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/confederation. Accessed 11 Aug. 2024.

[22] "[A] sovereign state formed by the union of several states that have given up certain powers to the central government while retaining for themselves control over local matters". "Federation." *Merriam-Webster's*

10113530.1.29-36

people of the states who do not willfully and knowingly participate in government offices, elections, and franchises as "citizens" are without the taxation authority of the federal government.

**VIII.**

The state governments did not acquire the authority to lay and levy "income taxes" on the free inhabitants' remuneration for labor or interfere with the right to labor for one's own subsistence which are both **unalienable** Rights. As established by the Declaration of Independence—1776, state Citizens "are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed".

a. Georgia's government was created to protect unalienable Rights as set forth in the Declaration of Independence. "Protection to person and property is the paramount duty of government and shall be impartial and complete." Article I, Section I, Paragraph II, Constitution of the State of Georgia.

b. An "income tax" on free inhabitants' person and property is deprivation of liberty and property without Due Process, which is *unconstitutional*.[23] "No person shall be deprived of life, liberty, or property except by due process of law." Article I, Section I, Paragraph I, Constitution of the State of Georgia.

c. Georgia's internal government is solely regulated by the people notwithstanding the will of Congress.[24] *Carter v. Carter Coal Co.*, 298 U.S. 238, 295 (1936) ("It is no longer open

*Unabridged Dictionary*, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/federation. Accessed 11 Aug. 2024.

[23] "Legislative acts in violation of this Constitution or the Constitution of the United States are void, and the judiciary shall so declare them." Article I, Section II, Paragraph V(a), Constitution of the State of Georgia.

[24] "The people of this state have the inherent right of regulating their internal government. Government is instituted for the protection, security, and benefit of the people; and at all times they have the right to alter or reform the same whenever the public good may require it." Article I, Section II, Paragraph II, Constitution of the State of Georgia.

10113530.1.30-36

to question that the general government, unlike the states, *Hammer* v. *Dagenhart*, 247 U.S. 251, 275, possesses no *inherent* power in respect of the internal affairs of the states; and emphatically not with regard to legislation. ")

d. The people did not grant Georgia's government the authority to lay and levy "income taxes" on free inhabitants, much less the federal government—especially not under false pretenses. "All government, of right, originates with the people, is founded upon their will only, and is instituted solely for the good of the whole. Public officers are the trustees and servants of the people and are at all times amenable to them." Article I, Section II, Paragraph II, Constitution of the State of Georgia.

e. Since the state governments do not have authority to lay and levy "income taxes" they therefore could not have ceded such Authority to the federal government. *U.S. v. Curtiss-Wright Corp.*, 299 U.S. 304, 315-16 (1936) ("The broad statement that the federal government can exercise no powers except those specifically enumerated in the Constitution, and such implied powers as are necessary and proper to carry into effect the enumerated powers, is categorically true … in respect of our internal affairs. In that field, the primary purpose of the Constitution was to carve from the general mass of legislative powers *then possessed by the states"*.)

**IX.**

Though a Citizen or *free inhabitant* of Georgia, PLAINTIFF is neither a state citizen nor a citizen (or national) of the United States within the meaning of Title 26 of the United States Code. "The term "State" [is] construed to include the District of Columbia, [because] such construction is necessary to carry out provisions of this title." 26 U.S.C. § 7701(a)(9).

**X.**

Incomes taxes cannot be arbitrarily imposed upon the person or property of PLAINTIFF outside the taxation jurisdiction of DEFENDANT IRS. "No principle is better settled than that the power of a State, even its power of taxation, in respect to property, is limited to such as is

10113530.1.31-36

within its jurisdiction...[w]here there is jurisdiction neither as to person nor property, the imposition of a tax [is] *ultra vires* and void... [j]urisdiction is as necessary to valid legislative as to valid judicial action". *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 342 (1954)

**XI.**

There can be no state or federal law that requires PLAINTIFF to become a "taxpayer"—as the term is defined in 26 U.S.C. § 77-1(a)(14)—as a stipulation of U.S. citizenship or personhood. Such "laws" are annulled by the U.S. Constitution because they impair the States' contractual obligation to secure Life, Liberty, and the pursuit of Happiness to PLAINTIFF under the Articles of Confederation and are therefore *unconstitutional*. (*See* also: The unanimous Declaration of the thirteen united States of America). A "legislative act of the government" is "not a law of the State" when "it impairs the obligation of its contract, and is annulled by the Constitution of the United States". *Poindexter v. Greenhow*, 114 U.S. 270, 271 (1884)

**XII.**

The Internal Revenue Service, the Internal Revenue Code, and Title 26 of the United States Code are all *unconstitutional* because: "It has been repeated so often as to become axiomatic, that this [national] government is one of enumerated and delegated powers, and, as declared in Article 10 of the amendments, 'the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.'... The governments of other nations have elastic powers—ours is fixed and bounded by a written constitution... the powers which the national government may exercise within such limits are those, and only those, given it by that instrument." *Fong Yue v. United States*, 149 U.S. 698, 737 (1893).

a. The Internal Revenue Code and Title 26 of the United States Code is not and cannot be law in the United States. *Padelford, Fay Co. v. Mayor Ald. City Savannah*, 14 Ga. 438, 463 (Ga. 1854) ("Laws of Congress are restricted to a certain sphere, and when they depart from this *sphere, they* are no longer supreme or binding.") *Poindexter v. Greenhow*, 114 U.S. 270, 272 (1884) ("It also follows, that these statutes cannot be regarded in the courts of the United States as laws [within a] State")

10113530.1.32-36

b. Codification and "positive enactment" of Title 26 does not give it the force of law. *United States v. Zuger*, 602 F. Supp. 889, 891 (D. Conn. 1984) ("Acts of Congress do not take effect or gain force by virtue of their codification into the United States Code; rather, they are simply organized in a comprehensive way under the rubric of appropriate titles, for ready reference.")

c. Imposition of Title 26 on the confederated states has "reduce[d] them to little more than geographical subdivisions of the national domain." *Carter v. Carter Coal Co.*, 298 U.S. 238, 296 (1936)

d. The Internal Revenue Service—a bureau of the U.S. Department of the Treasury under the executive branch of government— violates Article II of the U.S. Constitution. "[I]t is said that the legislative, executive, and judicial powers, of every well constructed government, are coextensive with each other; that is, they are potentially coextensive. The executive department may constitutionally execute every law which the legislature may constitutionally make, and the judicial department may receive from the legislature the power of construing every such law." *Osborn v. Bank of the United States*, 22 U.S. 738 (1824). The opposite is also true: the president cannot constitutionally enforce laws that Congress cannot constitutionally make.

************

**XIII.**

DEFENDANTS have recklessly, willfully, and knowingly made false representations in breach of duty contrary to good conscience with intent to deceive and to induce PLAINTIFF to act thereon whereby PLAINTIFF was deceived and did act thereon and thereby sustained extreme injury to peace, happiness, and feelings due to violations of state constitutional Rights.

a. DEFENDANT IRS misrepresented to PLAINTIFF that it is the constitutional taxing authority for the United States of America with legal right to demand taxes from the people. PLAINTIFF, being deceived and coerced by IRS, did pay "monies" (i.e. legal tender) to IRS that is not owed.

10113530.1.33-36

b. DEFENDANT DCCU misrepresented to PLAINTIFF that it is a bank formed under the laws of the United States of America and the state of Georgia, duly authorized to interact with and transact in constitutional monies. PLAINITFF, being deceived, did allow DCCU access to sensitive familial and personal information which it used to publicly demean and criticize PLAINTIFF's familial and marital status, as well as to call into question the character and integrity of PLAINTIFF and PLAINTIFF's husband.

**XIV.**

DEFENDANTS have slandered PLAINTIFF as a "U.S. person", "U.S. citizen", and "U.S. national" within the meaning of Title 26, United States Code. This falsely implicates PLAINTIFF as a "tax evader" or other criminal for failure to self-identify as a "taxpayer".

a. The burden is upon DEFENDANTS to prove that the following terms, within the meaning of Title 26, are not slanderous: U.S. citizen, U.S. national, and U.S. person. *Gandia v. Pettingill*, 222 U.S. 452, 454 (1912) ("Under the generally established American law in every instance of slander, either verbal or written, malice … whenever substantially averred and the language, either written or spoken, is proved as laid, its existence will be inferred by the law until, in the event of denial, the proofs be overthrown or the language itself be satisfactorily explained.")

**XV.**

DEFENDANTS did maliciously, negligently, intentionally, and willfully interfere with PLAINTIFF's contractual relations whereby PLAINTIFF was deprived of personalty and sustained exorbitant damages and loss. PLAINTIFF has lost several contracts and opportunities to contract to purchase homes, automobiles, and other personal items in pursuit of Happiness due to DEFENDANTS implicating PLAINTIFF as a "tax evader" and "tax protester" to third-parties with whom PLAINTIFF contracted or intended to contract.

************

10113530.1.34-36

## DAMAGES AND RELIEF

### I.

PLAINTIFF prays exemplary damages in the amount of twelve million dollars due to the aggravated nature of the slanders by DEFENDANTS, and the profound effect of such illicit behavior on the tate and society as a whole. There is "no constitutional value in false statements of fact" because neither "the intentional lie nor the careless error materially advances society's interest" in open debate on public issues. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974).

a. Defamation has a profound effect on society who has an interest in its deterrence. [25] *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966) ("Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.") Compensation significant enough to help prevent future harm to society is in the interest of the state,[26] and it is customary under the common and statute law to punish men for aggravated misconduct excess compensation in the form of damages.[27]

### II.

Exemplary damages are allowed where a tort is aggravated, and to the extent that the jury deems appropriate.[28] *Scott v. Donald*, 165 U.S. 58, 87 (1897) ("[the judge] directed and told [the

---

[25] "The legitimate state interest underlying the law of libel is the compensation of individuals for the harm inflicted on them by defamatory falsehood." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974).

[26] "States have an especial interest in torts committed within its territory." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)

[27] "It is the duty of every State to provide, in the administration of justice, for the redress of private wrongs; yet the damages which should be awarded to the injured party are not always readily ascertainable... The general rule undoubtedly is that they should be precisely commensurate with the injury. Yet in England and in this country, they have been allowed in excess of compensation, whenever malice, gross neglect, or oppression has caused or accompanied the commission of the injury complained of. 'The law,' says Sedgwick in his excellent treatise on damages, 'permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, blends together the interests of society and of the aggrieved individual, and gives damages, not only to recompense the sufferer but to punish the offender.' The discretion of the jury in such cases is not controlled by any very definite rules; yet the wisdom of allowing such additional damages to be given is attested by the long continuance of the practice." *Missouri Pacific Railway Co. v. Humes*, 115 U.S. 512, 521 (1885)

[28] "It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff. We are aware that the propriety of this doctrine has been questioned by some writers; but if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument. By

10113530.1.35-36

jury] they were not bound to any certain damages… it is very dangerous for the judges to intermeddle in damages for torts…"")

III.

Damages are the only remedy the law provides and must be significant enough to vindicate the wrong perpetrated against PLAINTIFF in order to help protect the interest of the state and promote the safety of society as a whole. *Rosenblatt v. Baer*, 383 U.S. 75, 93 (1966) ("The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored.")

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the date specified on page 1.* [*See* 28 U.S.C. § 1746].

/s/

*Tamah Jada Clark*
TAMAH JADA CLARK
**PLAINTIFF**

The Common Law Office ™
1880 Braselton Hwy
Suite 118 #5018
Lawrenceville, Ga 30043

X/Twitter: @TamahJadaClark
E-mail: CommonLaw119@gmail.com

Tel: 1(888) 256-6692 ext. 777
Fax: 1(888) 352-1570
Web: www.TamahJadaClark.com

---

the common as well as by statute law, men are often punished for aggravated misconduct or lawless acts, by means of a civil action, and the damages, inflicted by way of penalty or punishment, given to the party injured. In many civil actions, such as libel, slander, seduction, c., the wrong done to the plaintiff is incapable of being measured by a money standard; and the damages assessed depend on the circumstances, showing the degree of moral turpitude or atrocity of the defendant's conduct, and may properly be termed exemplary or vindictive rather than compensatory. *DAY v. WOODWORTH ET AL*, 54 U.S. 363, 371 (1851)

Case 1:24-cv-03613-JPB Document 4 Filed 09/06/24 Page 15 of 17

10113530.1.36-36



**CHAP. 409.**—An Act To amend section 126 of the National Defense Act, approved June 3, 1916, as amended.

September 22, 1922.
[H. R. 11173.]
[Public, No. 344.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That section 126 of the National Defense Act, approved June 3, 1916, as contained in section 3 of an Act entitled "An Act permitting any person who has served in the United States Army, Navy, or Marine Corps in the present war to retain his uniform and personal equipment, and to wear the same under certain conditions," approved February 28, 1919, be, and hereby is, amended to read as follows:

National Defense Act.
Travel allowance on discharge.
Vol. 39, p. 217.
Vol. 40, p. 1203, amended.

"SEC. 126. Hereafter an enlisted man discharged from the Army, Navy, or Marine Corps, except by way of punishment for an offense, shall receive 5 cents per mile for the distance from the place of his discharge to the place of his acceptance for enlistment, enrollment, or muster into the service: *Provided*, That for sea travel involved in travel between place of discharge and place of acceptance for enrollment, enlistment, or muster into the service only transportation in kind and subsistence en route shall be allowed: *Provided further*, That enlisted men under the age of eighteen discharged on the application of either of their parents or legal guardian shall be furnished with transportation in kind from the place of discharge to the railroad station at or nearest to the place of acceptance for enlistment, or to their home if the distance thereto is no greater than from the place of discharge to the place of acceptance for enlistment, but if the difference be greater they may be furnished transportation in kind for a distance equal to that from the place of discharge to the place of acceptance for enlistment."

Allowances to enlisted men of Army, Navy, and Marine Corps, from place of discharge to where enlisted, etc.

*Proviso.*
Sea travel.

Allowance limited if enlisted under age and discharged therefor, on application.

Approved, September 22, 1922.

---

**CHAP. 410.**—An Act Authorizing the Secretary of War to transfer and convey to the State of Connecticut all right and title now vested in the United States to land and buildings thereon known as Fort Hale.

September 22, 1922.
[H. R. 11347.]
[Public, No. 345.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the Secretary of War be, and he is hereby, authorized to transfer and convey to the State of Connecticut all right and title now vested in the United States to land and buildings in New Haven, Connecticut, known as Fort Hale: *Provided*, That the State of Connecticut shall agree to preserve the said land forever as a public park, to be known as Nathan Hale Park: *Provided further*, That in the event the said lands are not used for the purposes specified in this Act the same shall revert to the Government of the United States: *And provided further*, That the land shall be subject to the right of the United States to at any and all times and in any manner assume control of, hold, use, and occupy without license, consent, or leave from said State any or all of said lands for any and all military, naval, or other governmental purposes, free from any conveyances, charges, encumbrances, or liens made, created, permitted, or sanctioned thereon by said State.

Fort Hale, Conn.
Transferred to New Haven.

*Provisos.*
To be preserved as Nathan Hale Park.

Reverting for nonuse.

Right of use for Government purposes reserved.

Approved, September 22, 1922.

---

**CHAP. 411.**—An Act Relative to the naturalization and citizenship of married women.

September 22, 1922.
[H. R. 12022.]
[Public, No. 346.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the right of any woman to become a naturalized citizen of the United States shall not be

Citizenship.
Women not denied naturalization because of sex or marriage.

10113530.1.37-36



denied or abridged because of her sex or because she is a married woman.

Woman marrying citizen hereafter, or whose husband naturalized hereafter, not a citizen thereby.

Sec. 2. That any woman who marries a citizen of the United States after the passage of this Act, or any woman whose husband is naturalized after the passage of this Act, shall not become a citizen of the United States by reason of such marriage or naturalization; but, if eligible to citizenship, she may be naturalized upon full and complete compliance with all requirements of the naturalization laws, with the following exceptions:

Naturalization allowed under general laws. Exceptions.

No declaration of intention.

(a) No declaration of intention shall be required;

Continuous residence for one year accepted.

(b) In lieu of the five-year period of residence within the United States and the one-year period of residence within the State or Territory where the naturalization court is held, she shall have resided continuously in the United States, Hawaii, Alaska, or Porto Rico for at least one year immediately preceding the filing of the petition.

Citizenship not to cease after marriage, unless by formal renunciation.

Sec. 3. That a woman citizen of the United States shall not cease to be a citizen of the United States by reason of her marriage after the passage of this Act, unless she makes a formal renunciation of her citizenship before a court having jurisdiction over naturalization of aliens: *Provided*, That any woman citizen who marries an alien ineligible to citizenship shall cease to be a citizen of the United States. If at the termination of the marital status she is a citizen of the United States she shall retain her citizenship regardless of her residence. If during the continuance of the marital status she resides continuously for two years in a foreign State of which her husband is a citizen or subject, or for five years continuously outside the United States, she shall thereafter be subject to the same presumption as is a naturalized citizen of the United States under the second paragraph of section 2 of the Act entitled "An Act in reference to the expatriation of citizens and their protection abroad," approved March 2, 1907. Nothing herein shall be construed to repeal or amend the provisions of Revised Statutes 1999 or of section 2 of the Expatriation Act of 1907 with reference to expatriation.

*Proviso.* Citizenship to cease on marriage to ineligible alien.

Status if residence abroad continued.

Vol. 34, p. 1228.

Right of expatriation not affected. R. S., sec. 1999, p. 350. Vol. 34, p. 1228.

Naturalization if citizenship lost by marriage prior hereto.

Sec. 4. That a woman who, before the passage of this Act, has lost her United States citizenship by reason of her marriage to an alien eligible for citizenship, may be naturalized as provided by section 2 of this Act: *Provided*, That no certificate of arrival shall be required to be filed with her petition if during the continuance of the marital status she shall have resided within the United States. After her naturalization she shall have the same citizenship status as if her marriage had taken place after the passage of this Act.

*Proviso.* Certificate of arrival waived.

Status thereafter.

No naturalization of woman with ineligible husband.

Sec. 5. That no woman whose husband is not eligible to citizenship shall be naturalized during the continuance of the marital status.

Acquiring citizenship by marriage, repealed. R. S., sec. 1994, p. 350, repealed. Vol. 34, p. 1229, repealed. Present status, not changed.

Sec. 6. That section 1994 of the Revised Statutes and section 4 of the Expatriation Act of 1907 are repealed. Such repeal shall not terminate citizenship acquired or retained under either of such sections nor restore citizenship lost under section 4 of the Expatriation Act of 1907.

Termination by marriage to alien, repealed. Vol. 34, p. 1228, repealed.

Sec. 7. That section 3 of the Expatriation Act of 1907 is repealed. Such repeal shall not restore citizenship lost under such section nor terminate citizenship resumed under such section. A woman who has resumed under such section citizenship lost by marriage shall, upon the passage of this Act, have for all purposes the same citizenship status as immediately preceding her marriage.

Status if resumed.

Approved, September 22, 1922.

10113530.1.6-36



recovery of any money received by him and paid into the Treasury in the performance of his official duty, he shall receive such compensation as may be certified to be proper by the court in which the suit is brought, and approved by the Secretary of the Treasury. [See § 4646.]

3 Mar., 1863, c. 76, s. 12, v. 12, p. 741. 16 *June*, 1874, c. 285, *v.* 18, *p.* 72. 22 *Feb.*, 1875, *c.* 95, *s.* 7, *v.* 18, *p.* 334.

CLERKS' FEES.

Clerks' fees.

26 Feb., 1853, c. 80, s. 1, v. 10, pp. 163, 167. 16 *June*, 1874, *c.* 285, *v.* 18, *p.* 72. 22 *Feb.*, 1875, *c.* 95, *v.* 18, *p.* 333. 22 *Feb.*, 1875, *c.* 95, *s.* 7, *v.* 18, *p.* 334. 26 *June*, 1876, *c.* 147, *v.* 19, *p.* 62.

Bottomlee *v.* U. S., 1 Story, 153; Pomeroy *v.* Harter, 1 McLean, 448; *Anon*, Hempst., 450; Erwin *v.* Cummins, Hempst., 703; *Ex parte* Paris, 3 Wood. & Min., 227.

SEC. 828. For issuing and entering every process, commission, summons, capias, execution, warrant, attachment, or other writ, except a writ of venire, or a summons or subpœna for a witness, one dollar.

For issuing a writ of summons or subpœna, twenty-five cents.

For filing and entering every declaration, plea, or other paper, ten cents.

For administering an oath or affirmation, except to a juror, ten cents.

For taking an acknowledgment, twenty-five cents.

For taking and certifying depositions to file, twenty cents for each folio of one hundred words.

For a copy of such deposition furnished to a party on request, ten cents a folio.

For entering any return, rule, order, continuance, judgment, decree, or recognizance, or drawing any bond, or making any record, certificate, return, or report, for each folio, fifteen cents.

For a copy of any entry or record, or of any paper on file, for each folio, ten cents.

For making dockets and indexes, issuing venire, taxing costs, and all other services, on the trial or argument of a cause where issue is joined and testimony given, three dollars.

For making dockets and indexes, taxing costs, and all other services, in a cause where issue is joined, but no testimony is given, two dollars.

For making dockets and indexes, taxing costs, and other services, in a cause which is dismissed or discontinued, or where judgment or decree is made or rendered without issue, one dollar.

For making dockets and taxing costs, in cases removed by writ of error or appeal, one dollar.

For affixing the seal of the court to any instrument, when required, twenty cents.

For every search for any particular mortgage, judgment, or other lien, fifteen cents.

For searching the records of the court for judgments, decrees, or other instruments constituting a general lien on real estate, and certifying the result of such search, fifteen cents for each person against whom such search is required to be made.

For receiving, keeping, and paying out money, in pursuance of any statute or order of court, one per centum on the amount so received, kept, and paid.

For traveling from the office of the clerk, where he is required to reside, to the place of holding any court required by law to be held, five cents a mile for going and five cents for returning, and five dollars a day for his attendance on the court while actually in session.

Books in clerks' offices open to inspection.

12 Aug., 1848, c. 166, s. 1, v. 9, p. 292.

All books in the offices of the clerks of the circuit and district courts, containing the docket or minute of the judgments, or decrees thereof, shall, during office hours, be open to the inspection of any person desiring to examine the same, without any fees or charge therefor.

MARSHALS' FEES.

Marshals' fees.

26 Feb., 1853, c. 80, s. 1, v. 10, p. 164. 22 *Feb.*, 1875, *c.* 95, *v.* 18, *p.* 333.

SEC. 829. For service of any warrant, attachment, summons, capias, or other writ, except execution, venire, or a summons or subpœna for a witness, two dollars for each person on whom service is made.

For the keeping of personal property attached on mesne process, such compensation as the court, on petition setting forth the facts under oath, may allow.